NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted March 23, 2011[*]
Decided April 1, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 10-3290 & 10-3304

| | |
|---|---|
| TAMMI P. BOWDEN and NANCY J. GAGEN, *Plaintiffs-Appellants,* | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | Nos. 07 C 975, 07 C 979 |
| KIRKLAND & ELLIS LLP, *Defendant-Appellee.* | Rebecca R. Pallmeyer, *Judge.* |

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

# O R D E R

In this consolidated appeal, Tammi Bowden and Nancy Gagen challenge the grants of summary judgment on their respective actions claiming, among other things, that their former employer, the law firm Kirkland & Ellis LLP, intercepted and monitored their personal phone calls in violation of the Electronic Communications Privacy Act, 42 U.S.C. §§ 2510-2522. We affirm the district court's judgments.

This appeal arises from lawsuits that Bowden and Gagen both filed against Kirkland, asserting various employment discrimination claims. Bowden is an African-American woman who worked as a legal secretary at the firm between 1996 and 2007. She believes that she received unfavorable work assignments, fewer opportunities, and greater scrutiny from her supervisors because of her race; she subsequently claimed racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and 42 U.S.C. § 1981. Gagen is a white woman who worked as a document specialist at the firm from 2002 until 2006, when she was fired for disclosing confidential information about firm personnel issues to an individual at another law firm. She claimed that her discharge was in fact retaliation for her supporting Bowden in her discrimination claims.

After almost a year of discovery, Bowden and Gagen amended their complaints to allege that the firm intercepted and eavesdropped on hundreds of phone calls made from Bowden's personal cellphone and Gagen's landline, in violation of the Electronic Communications and Privacy Act, 18 U.S.C. § 2510-2522, and the Illinois Eavesdropping Act, 720 ILCS 5/14-2. The two women based their claims primarily on discrepancies that they identified in call records for their personal phones. Bowden, for instance, testified that her cellphone bills did not include calls that she remembers making on her cellphone while she was at work; but records of these same calls, she urges, suspiciously appeared on logs for her desk phone at Kirkland.

In the discovery that ensued, Bowden and Gagen found further anomalies that, they believed, reflected Kirkland's deliberate wrongdoing. For example, there were additional inconsistencies in the women's telephone billing records, which, their expert witnesses suggested, reflected the possibility that a firm with the right equipment and expertise could have intercepted and rerouted their calls. Bowden and Gagen also introduced evidence that in 2007 Kirkland destroyed a computer server, which, they believe, contained records of phone calls from 2005 and 2006 that would help them prove their claim of interception. But Kirkland's representatives–its general counsel, its telecommunications department

manager, and its head of human resources—all testified that the firm did not intercept any of the women's phone calls and did not have the technical capability to even do so.

In 2007 counsel for Bowden (whose case had been assigned to Judge Pallmeyer) and Gagen (whose case had been assigned to Judge Lindberg) asked the district court to consolidate their cases. The Executive Committee of the Northern District of Illinois granted the request in part, consolidating both actions before Judge Pallmeyer for the purpose of discovery. Over the next two and a half years, the parties carried out discovery, and Bowden and Gagen amended their complaints to add claims of telephone interception under both federal and state law. Towards the end of 2008, Bowden and Gagen fired their lawyers and began to appear pro se, although Gagen later retained counsel once again in fall 2009. In December 2009 Judge Pallmeyer granted Kirkland's request to consolidate both women's cases for purposes of summary judgment on their interception and eavesdropping claims, and in early 2010 she extended the consolidation to include the discrimination claims. Bowden and Gagen did not object in either instance. Shortly thereafter Kirkland moved for summary judgment on both the interception and employment-discrimination claims.

The district court granted Kirkland's motions. In comprehensive companion opinions, the court concluded that Bowden and Gagen failed to create an issue of material fact in their claims for race discrimination or retaliation, and failed to put forth any non-speculative evidence that Kirkland engaged in the alleged interception activities. Regarding the latter conclusion, the court noted that Bowden's and Gagen's claims were "on their face, improbable. . . . the stuff of a John Grisham novel," and explained that they failed to produce "any evidence to support their sweeping allegations beyond a few anomalous but inconclusive records."

We consolidated Bowden's and Gagen's appeals for purposes of briefing and decision. Both women now target the district court's grant of summary judgment on their federal interception claims. By omitting any challenges to the district court's rulings on their discrimination, retaliation, or state-law eavesdropping claims, Bowden and Gagen have waived them. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

Gagen and Bowden first argue that Judge Pallmeyer lacked authority to rule upon Gagen's claims. They insist that the Executive Committee assigned Gagen's case to Judge Pallmeyer—who was already presiding over Bowden's case—for the limited purpose of conducting consolidated discovery, and that Judge Pallmeyer therefore lacked authority to dispose of Gagen's case on summary judgment.

This argument is meritless. The Executive Committee did consolidate the claims before Judge Pallmeyer for the purpose of discovery, *see* N.D. Ill. R. 40.1(d), 40.4(d), but it also contemplated that the case could close before discovery's end: the case was to be reassigned back to the judge before whom it was previously pending "if. . . [it] is not closed while it is pending before Judge Pallmeyer." Because Judge Pallmeyer retained authority to adjudicate the case until the close of discovery—and expert discovery was ongoing—her decision to grant summary judgment was within her discretion. Moreover, Gagen's counsel did not object to an extension of the consolidation before Judge Pallmeyer as it related to Gagen's claims, and thus Gagen waived any challenge to Judge Pallmeyer's authority to adjudicate her case. *See Delapaz v. Richardson*, _ F.3d _, 2011 WL 547483, at *3 (7th Cir. Feb. 14, 2011); *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 652 (7th Cir. 2007).

Bowden and Gagen also argue that Judge Pallmeyer abused her discretion when she set concurrent briefing schedules on Kirkland's summary-judgment motions and refused to grant more than a two-week extension to their deadline to respond to Kirkland's motions. By this point in the litigation Bowden had discharged her lawyer and appeared pro se, though Gagen was represented by counsel. The court's rulings, they urge, unreasonably burdened them in that they prevented Bowden—who had voluntarily assumed sole responsibility for preparing a joint brief on their interception and eavesdropping claims—from having enough time to respond to Kirkland's motion on her discrimination and retaliation claims.

Judge Pallmeyer acted within her broad discretion in setting the briefing schedule. *See* FED. R. CIV. P. 56; *Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008). At the hearing on this issue, she acknowleged that concurrent briefing schedules imposed *some* burden on Bowden and Gagen, but she appropriately justified her ruling by noting the prolonged nature of discovery that had already taken place, the prior extensions of time she had allowed for filing dispositive motions, and the additional two-week extension she granted so that the parties had more time to file their responses. The judge was entirely reasonable in trying to move this case along. *See Daniels v. Brennan*, 887 F.2d 783, 787 (7th Cir. 1989).

Bowden and Gagen next argue that Judge Pallmeyer also abused her discretion when in February 2010 she denied their motions to amend their complaints to add new claims and defendants, and to allege new methods of interception. But while leave to amend a complaint should normally be granted when justice requires it, *see* FED. R. CIV. P. 15(a)(2), here the court reasonably refused to permit amendment. *See Schor v. City of Chicago*, 576 F.3d 775, 780 (7th Cir. 2009); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 367 F.3d 650, 668 (7th Cir. 2004). Bowden and Gagen sought to add new parties only days before dispositive motions were due, and more than a year after the

deadline to amend complaints had passed. Moreover, the court reasonably concluded that adding new defendants would unduly delay disposition of the case by triggering another round of discovery or flurry of motions, and adding new theories of interception was unnecessary given that their complaint sufficiently raised the claim of interception.

Finally, Bowden and Gagen challenge the district court's rationale for granting summary judgment on their interception claims. They disagree with the court's conclusion that their experts' testimony and the inconsistencies in their phone records were insufficient to permit a reasonable jury to infer that Kirkland engaged in an expensive, technologically sophisticated conspiracy to intercept and monitor their private phone conversations. The court also erred, they assert, by not recognizing that Kirkland's destruction of its server—and the data it contained—was bad faith; these data, they maintain, could have helped them identify an issue of material fact concerning their claim. *See Loudermilk v. Best Pallet Co., LLC*, _ F.3d _, 2011 WL 563765, at *2 (7th Cir. Feb. 18, 2011); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008).

In relevant part, the ECPA imposes civil liability on persons who intentionally intercept, or try to intercept, a wire, oral or electronic communication; or who intentionally disclose, use, or try to disclose or use the contents of a wire, oral, or electronic communication, if they know or have reason to know that the information was obtained through interception. *See* 18 U.S.C. §§ 2511(1), 2520(a); *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751-52 (7th Cir. 2010); *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003); *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 167 (3d Cir. 2005). Thus to stave off summary judgment, Bowden and Gagen had to identify a fact issue regarding whether anyone intercepted or tried to intercept their calls.

The district court properly granted summary judgment for Kirkland because Bowden and Gagen failed to produce any evidence that anyone intercepted their phone calls. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). As the court noted, testimony from Bowden's and Gagen's two experts establishes only a "theoretical possibility" that the firm could have committed the nefarious actions that Bowden and Gagen allege; their strongest expert acknowledged as much when he qualified his conclusion and opined that the evidence "could indicate the potential that interception may have occurred." Their other evidence—primarily discrepancies in phone records and correspondence from an employee at a rival law firm—rests largely on speculation and conjecture and is unconnected to any wrongdoing by Kirkland. And the district court correctly rejected the suggestion that Kirkland deliberately destroyed evidence potentially relevant to this litigation; Bowden and Gagen offered no evidence beyond mere conjecture to suggest that Kirkland's destruction of the server somehow reflected bad faith. *See Faas*, 532 F.3d at 644-45. In short, they present

nothing more than their own unsubstantiated speculation to show Kirkland's wrongdoing, and conjecture alone is insufficient to defeat a motion for summary judgment. *See Delapaz,* _ F.3d _, 2011 WL 547483, at *4.

AFFIRMED.